

# NUMBERS 13-24-00029-CR, 13-24-00030-CR, 13-24-00031-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**WILBERT JAMES JONES JR.,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

## ON APPEAL FROM THE 443RD DISTRICT COURT
## OF ELLIS COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca**
**Memorandum Opinion by Justice Fonseca**

Appellant Wilbert James Jones Jr. was convicted on three counts of sexual assault of a child, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.011(a)(2), (f). Jones's punishment was enhanced to that of a first-degree felony due to the jury's finding that he was a repeat felony offender, and he was sentenced to life imprisonment for each count.

*See id.* § 12.42(b). On appeal, Jones contends that the trial court violated his due process rights in all three cases by failing to order a second competency evaluation. We affirm.[1]

## I. BACKGROUND

In three indictments, Jones was accused of causing the contact or penetration of the sexual organ of his niece L.M., a child under seventeen years of age, by his sexual organ. *See id.* § 22.011(a)(2). The offenses allegedly occurred on or about May 15, 2011,[2] June 1, 2011,[3] and October 15, 2011.[4]

A hearing was held on May 30, 2023, on Jones's request to represent himself at trial. Jones's appointed counsel represented to the court that Jones was "mentally competent" and was "adamant about representing himself." The trial court extensively admonished Jones of his rights and the implications of appearing pro se at trial. The trial court rendered an order finding that Jones had knowingly and voluntarily waived his right to counsel and permitting Jones to represent himself at trial.

On October 19, 2023, the trial court signed an order requiring Jones to submit to an examination by "Dr. Taft and Associates" to determine his competency to stand trial. The record does not contain any written report relating to any such examination.

The three charges were tried together in November of 2023. Prior to voir dire, Jones stated he was "not prepared to go pro se right now" because he "can't think" and "can't focus." The prosecutor asked the trial court "to take judicial notice of the

---

[1] This appeal was transferred from the Tenth Court of Appeals in Waco pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001(a). We are required to follow the precedent of the transferor court to the extent it differs from our own. TEX. R. APP. P. 41.3.

[2] Appellate cause number 13-24-00031-CR.

[3] Appellate cause number 13-24-00029-CR.

[4] Appellate cause number 13-24-00030-CR.

competency evaluation where the examiner believes that part of that exam, that Mr. Jones was faking or exaggerating mental health issues in some of the answers that were given, but he was still ultimately found to be competent." The trial court denied Jones's request for a continuance and proceeded with voir dire, which Jones participated in by asking questions of the venire members.

The following day, before testimony began, Jones stated that he was "confused"; that he was "having voices telling me that I should do this[,] I should do that"; and that one of the voices "caused me to run into a wall." He said "[p]eople have been talking to me, trying to get me to dematerialize, saying I can go through a wall and do different things." The trial court replied: "Okay. Well, that was one reason why I had a competency evaluation because I think you are somewhat playing the Court. And so I had a competency hearing and the doctor says you are just fine." The judge noted that "[i]n your competency report, there was nothing ever in the record of you hearing voices or anything." Jones repeated that he was "confused." However, when the court asked Jones whether he wanted his appointed counsel to "take over so he can ask the questions," Jones replied: "I want to ask my own questions." The trial court stated on the record that Jones is competent.

The prosecutor explained that, according to a detention officer, Jones had "tried to injure himself" that morning by falling and hitting his head against a wall. He was placed in a wheelchair and given a helmet. The prosecutor then stated:

> For the record, he is not wearing that helmet now, but [the detention officer] believed that he was trying to injure himself purposely so that he could go to the hospital so that he did not have to have his trial today.
>
> Also, in the competency evaluation that the Court had done, and that was dated October 25th, 2023, Dr. Octavia Landrum also indicated in that report that she felt he was not being honest as well and that he was trying to

portray that he was having issues recalling information, but then when she would ask him questions like, "Who is the president?" he knew that information, which, if he had an injury, he would not know that.

And so in her report, and I know it's in the records, she also believed that he was feigning that he was having competency issues and was not being truthful with her. And I believe in her report she says that he was not putting forth his best effort at answering her information.

And so the State does believe that he is, again, trying to postpone the trial and feign some type of injury, but I just wanted to put that on the record, since she's not in here to testify to that.

Jones denied that he was "trying to feign any injury." The trial proceeded with Jones representing himself and with his previously-appointed counsel also present.

Trial testimony established that in 2011, Jones moved into a house in Ennis to live with his parents and his sister. Also living at the house were his sister's six children, including L.M., who was born in 1996. L.M. testified Jones touched her inappropriately and had sexual intercourse with her on multiple occasions in 2011, when she was fifteen years old, including in her cousin's bedroom and in Jones's bedroom. In September of that year, L.M. found out that she was pregnant. She told Jones that the baby was not his "[b]ecause [she] didn't want it to be." She and Jones had intercourse again in October 2011, and L.M. gave birth to a baby boy in February of 2012. L.M. said that, as soon as she saw the child, she knew that Jones was the father. However, out of shame, she falsely told her family that the father was someone she went to school with, and they believed her.

In 2012, L.M. moved with her mother and siblings to an apartment in Dallas. L.M. testified that Jones found out where she was living; he visited her there, and they had intercourse on two or three more occasions. Ultimately, after L.M.'s grandfather died, L.M.'s aunt reported Jones's abuse of L.M. to police in October 2020. In interviews with

4

police, Jones denied sexually assaulting L.M., and he accused L.M.'s other aunt of paying L.M. to make up the allegations due to a dispute about an inheritance from the grandfather. Jones was eventually arrested, and a buccal swab analysis demonstrated a likelihood of over 99.99999999 percent that he was the father of L.M.'s son.

L.M. testified her son was eleven years old at the time of trial, and that she told him about his father's identity about a week before her testimony. Jones testified in his own defense and denied the allegations. On cross-examination, Jones said he and his girlfriend would occasionally have sex at the Ennis house; he said he noticed that someone pulled used condoms out of the trash, and he contended there was "a possibility" that L.M. used them to get pregnant.

Jones was convicted as charged, and this appeal followed.

## II. COMPETENCY EVALUATION

### A. Standard of Review and Applicable Law

"[T]he conviction of an accused person while he is legally incompetent violates due process." *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Turner v. State*, 422 S.W.3d 676, 688–89 (Tex. Crim. App. 2013). "A person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. ANN. art. 46B.003(a). "A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." *Id.* art. 46B.003(b). "If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may

5

be incompetent to stand trial" and "shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(b), (c). "If after an informal inquiry the court determines that evidence exists to support a finding of incompetency, the court shall order an examination under Subchapter B to determine whether the defendant is incompetent to stand trial in a criminal case." *Id.* art. 46B.005(a).

If a formal competency proceeding results in a finding of competency, "the trial court is not obliged to revisit the issue later absent a material change of circumstances suggesting that the defendant's mental status has deteriorated." *Turner*, 422 S.W.3d at 693; *Learning v. State*, 227 S.W.3d 245, 250 (Tex. App.—San Antonio 2007, no pet.) ("To justify a second competency hearing, defense counsel would have had to offer new evidence of a change in [appellant]'s mental condition since the first competency hearing.").

We review a trial court's decision not to order a competency examination or conduct a formal competency trial for an abuse of discretion. *See Laflash v. State*, 614 S.W.3d 427, 432 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *Farris v. State*, 506 S.W.3d 102, 110 (Tex. App.—Corpus Christi–Edinburg 2016, pet. ref'd). "A trial court's first-hand factual assessment of a defendant's competency is entitled to great deference on appeal." *Farris*, 506 S.W.3d at 110 (citing *Ross v. State*, 133 S.W.3d 618, 627 (Tex. Crim. App. 2004)).

## B. Analysis

Jones argues that he "was unable to understand the proceedings" and that his mental condition "prevented him from making rational decisions." He further contends that

6

"[t]he conditions [he] experienced during trial were different tha[n] those which necessitated the competency exam in October 2023." Specifically, he complained of confusion and hearing voices which caused him to act against his will. Jones claims that this demonstrates a "material change of circumstances" since the competency exam which required the trial court to order an additional evaluation. *See Turner*, 422 S.W.3d at 693; *Learning*, 227 S.W.3d at 250.[5]

We note that, because the report of Jones's competency exam is not in the record, we cannot independently verify whether the conditions Jones complained of at the beginning of trial differ meaningfully from those which had been considered at the initial evaluation. *See Davis v. State*, 345 S.W.3d 71, 78 (Tex. Crim. App. 2011) (noting that it is the appealing party's burden "to present a record in the court of appeals that demonstrates he is entitled to appellate relief"). Even assuming that Jones complained of hearing voices and being confused for the first time when trial began in November of 2023, we cannot say that these complaints required the trial court to order a second competency evaluation.

According to the prosecutor's representations, which Jones does not dispute on appeal, the evaluator determined that Jones was competent to stand trial and that he was "faking or exaggerating mental health issues," was "feigning that he was having competency issues," and "was not being truthful with her." The trial court was within its discretion to determine that Jones's representations made prior to voir dire were of the

---

[5] Jones does not argue that his mental condition prevented him from knowingly and voluntarily choosing to represent himself at trial, nor does he argue that the trial court erred by permitting him to do so. *Cf. Indiana v. Edwards*, 554 U.S. 164, 174 (2008) (holding that the Constitution permits a State to require representation by counsel when the defendant lacks the mental capacity to conduct his trial defense pro se).

same variety and that they did not indicate a deteriorating mental condition or a material change in circumstances since the evaluation. *See Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009) ("[T]hose who observed the behavior of the defendant at the hearing were in a better position to determine whether she was presently competent."); *McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003) (noting that "the trial court's first-hand factual assessment of appellant's mental competency" and its findings "that appellant understood the nature of the proceedings and assisted his counsel in his defense" are "entitled to great deference by the reviewing court"); *see also Ramos v. State*, No. 13-22-00293-CR, 2023 WL 8850088, at *11 (Tex. App.—Corpus Christi–Edinburg Dec. 21, 2023, no pet.) (mem. op., not designated for publication) (concluding that, although appellant made "demonstrably false or non-sensical statements to the trial court" and "appeared confused about his application for probation and his not guilty plea," the trial court could have rationally determined appellant's statements were "made purposefully in order to obstruct the trial" and no second competency evaluation was required); *Duong v. State*, No. 02-18-00128-CR, 2019 WL 3334426, at *7 (Tex. App.—Fort Worth July 25, 2019, no pet.) (mem. op., not designated for publication) (finding that the trial court could have reasonably concluded that it was facing a disruptive but competent defendant intent on stopping the trial and therefore the trial court did not abuse its discretion by failing to conduct a competency hearing).

We agree with the State that "[a] new competency evaluation is not required simply because the defendant describes a new symptom, or otherwise a malingering defendant can simply add an additional symptom at every hearing." And Jones points to nothing in the record indicating that he lacked a rational or factual understanding of the proceedings

against him. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a). In fact, the record shows he understood the trial court's questions and knew exactly what was happening when the trial court, prior to commencing trial, carefully explained the charges and ranges of punishment, reviewed his election on punishment, discussed his acknowledgement of the State's discovery compliance, and addressed in detail his decision to proceed pro se. The record also shows Jones had a clear understanding of the charges against him and asked coherent questions of the venire panel during jury selection consistent with his defense.[6] The trial court properly concluded Jones was competent to stand trial.

For the foregoing reasons, we overrule Jones's sole issue on appeal.

### III. CONCLUSION

The trial court's judgments are affirmed.

YSMAEL D. FONSECA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
30th day of January, 2025.

---

[6] For example, Jones asked one venire member, "If a person gets bribed or coerces a person into doing something, should they be charged?" He asked another venire member who had reported knowing someone who was sexually assaulted, "How long did they wait to report it?"